[No. 785.]

A. W. MAXWELL, PETITIONER, *v.* HENRY RIVES, RE-
SPONDENT.

INQUIRY UPON CERTIORARI.—The inquiry upon certiorari must be confined to the simple question whether the respondent exceeded his jurisdiction in making the orders complained of.

DEPOSITION OF A PARTY CONFINED IN JAIL.—A party to a civil action has the right to take the deposition of his adversary whether he is in or out of jail.

IDEM—ORDER OF JUDGE—SECTIONS 1459, 1460 AND 1461 CONSTRUED.—The law requiring an affidavit to be made of certain facts before the court should make an order to have the party in jail produced in court, was never designed for the protection of the prisoner, but only to prevent improper and unnecessary interference with the custody of prisoners.

IDEM.—If the order for the prisoner's attendance in court was improvidently granted, it is no concern of the prisoner, being before the court he was bound to answer any question that he would have been required to answer if the process for bringing him there had been strictly pursued.

IDEM—CONTEMPT OF COURT—REFUSAL TO ANSWER QUESTIONS.—If the witness refused to answer questions when the court decided he should answer, it was a contempt and punishable as such. The prisoner might have put himself upon his privilege not to criminate or degrade himself, but he expressly disclaimed this excuse, and was therefore bound to answer the questions, or he was liable to be punished for contempt.

CONTEMPT OF COURT—PENAL STATUTE.—The statute concerning contempts is a penal statute, and must be strictly construed in favor of those accused of violating its prohibitions.

IDEM—JURISDICTION TO IMPOSE SENTENCE.—Petitioner was asked a number of questions, all being addressed to the same point, which he refused to answer. The court found him guilty of a separate contempt for every question that he refused to answer: *Held,* that in refusing to answer, the petitioner was guilty of but one contempt, and that the court had jurisdiction to impose but one sentence.

THIS was an original proceeding in the supreme-court upon a writ of certiorari.

The facts are stated in the opinion.

*A. B. Hunt, J. C. Foster, and T. W. W. Davies,* for petitioner.

I. The court had no power to make any order of any kind whatever, either for the examination of Maxwell or adjudging him guilty of a contempt, or to strike out his answer in the civil action.

The affidavit of Kelly conferred no jurisdiction whatever upon the court to act; it was as though no affidavit whatever had been filed. (Comp. Laws, secs. 1459–61; *State* v. *Steel,* 1 Nev. 27; *State* v. *Commissioners Washoe County,* 5 Nev. 317, and cases therein cited; *Morgan* v. *Commissioners Eureka County,* 9 Nev. 360.)

II. The affidavit shows a want of jurisdiction on the face of the record; and when this appears, no presumption can

be indulged in to contradict the record. (*Hahn* v. *Kelly*, 34 Cal. 404 to 408.)

III. It was necessary in the affidavit of Kelly to have set out the facts expected to be proved by the witness, and to have shown their materiality. (*Dodds* v. *Meadow Valley*, 7 Nev. 148.)

IV. The statute prohibits any examination except upon a proper affidavit. (42 Cal. 58; 8 Nev. 274; 7 Nev. 22.)

V. If the action of the District Court is void for want of jurisdiction it should be set aside. (39 Cal. 571; 9 Nev. 355.)

VI. The power to punish for contempt is arbitrary, and the affidavit must show a case within the statute or fail. (42 Cal. 412–14; 9 Nev. 360.)

VII. Whenever a new right has been created it must be strictly pursued. (5 Cal. 210–11).

VIII. The order being void, it was no contempt to refuse to answer. (5 Denio, 539; 20 Wend. 208–9.)

IX. Defendant could not be compelled to answer. (1 Greenleaf, sec. 451.)

X. No court has a right to multiply fines in one proceeding. (60 N. Y. 559, case of Tweed.)

*Robert M. Clarke, A. C. Ellis and Garber & Thornton,* for Respondent.

I. Sections 1459, 1460 and 1461, 1 Comp. Laws, provide the means for getting at a witness who is in custody. The order was to the sheriff. He had the custody of the witness, and he might refuse to let his deposition be taken. To prevent this, and to secure to the moving party his right to the deposition of the witness in custody, these sections were passed. There is no reason why the witness should complain that these provisions were not strictly complied with. They are for the benefit of the moving party, and for the protection of the court and the sheriff, that there might be no useless intrusion upon the custody of the witness which is devolved by the law upon the sheriff.

The witness has no interest in these provisions, and no right to complain if they are not strictly followed. If these

forms and requirements are not in all respects complied with, and the witness is produced before the officer, he must testify, unless his answer to the question would criminate him.

II. If a party appears to testify, is sworn, and submits to a partial examination, it is too late to move against the order that the affidavit on which it was made did not present a case authorizing the order. (*McCue* v. *Tribune Association*, Sup. Ct. N..Y., 1 Hun. 470.)

III. The writ of certiorari will not lie. The court had jurisdiction of the case and of the defendant. At the most, this can only be claimed to be an erroneous order, and is open to correction on appeal. There is no question of jurisdiction about this matter. The term is misapplied. It is simply that defendant, being present before the court, committed a contempt in refusing to answer a proper question, without any reason given for the refusal.

By the Court, BEATTY, J.:

The respondent is judge of the seventh district, and this is a proceeding by certiorari instituted for the purpose of reversing his order adjudging the petitioner guilty of contempt of court. The return to the writ discloses the following state of facts:

The Meadow Valley Mining Company sued the petitioner to recover a lot of crude silver bullion valued at $4000, and he was subsequently indicted by the grand jury of Lincoln county for the larceny of the same bullion. Both cases were set for trial on the same day—October 14, 1875—the trial of the criminal case to take precedence. On the fourth of October the attorney of the Meadow Valley Company gave notice that he would take the deposition of Maxwell in the civil case before the respondent, the district judge, on the ninth of October, and at the same time filed and served the ordinary affidavit for taking the deposition of a party to an action. The petitioner being confined in the county jail under the indictment for larceny, the respondent, as district judge, ordered the sheriff to bring him into open court for the purpose of giving his deposition, and in com-

pliance with that order the sheriff produced him in court on the ninth of October, and he was sworn as a witness. He was then asked a number of questions, some of which he answered and some of which he declined to answer. Those which he declined to answer were all addressed to the same point, and amounted in effect to this: "How did you become possessed of that bullion?" The grounds specified for his refusal to answer were various, but are all comprised under these heads: First. The proceeding to take his deposition was not authorized by law; and, Second. To answer would expose his defense to the criminal charge upon which he was about to be tried, and so give the state an undue advantage over him. The court overruled these objections and found him guilty of a separate contempt for every question that he refused to answer—ten in all—and imposed ten fines amounting in the aggregate to $4250. The court also struck out his answer in the case. After an attempted trial of the criminal case, in which the jury disagreed, the petitioner, through his counsel, offered to answer the questions which he had before refused to answer, and thereupon moved the court to vacate the orders fining him for contempt and to reinstate his answer. These motions were overruled. The affidavits filed in connection with the various proceedings in the district court contain a great many allegations intended to prove that the taking of petitioner's deposition in the civil case, before his trial on the criminal charge, was designed for no other purpose than to fish for evidence and discover his defense, so as to put him in the power of "his enemies," meaning thereby the Meadow Valley Company and the district attorney. These allegations, however, cannot be considered. In this proceeding we are not at liberty to extend our inquiry beyond the simple question whether the respondent exceeded his jurisdiction. The motives of those who invoked his action, however wicked they may have been, are entirely beside the purpose, and our decision will be based solely upon the material facts which are above fully set forth.

It will not be necessary either to specify all the particulars of the alleged excess of jurisdiction, as three only of

his specifications are relied upon by the petitioner, which
are:

First. The court exceeded its jurisdiction in ordering the
sheriff to bring him out of jail and into court;

Second. In ordering him to be sworn and to answer as a
witness; and

Third. In imposing successive or cumulative fines.

The first and second points have been argued and will be
considered together. With reference to both it may be
said that there is no pretense that the Meadow Valley com-
pany would not have had the absolute right to take the
deposition of the petitioner on the notice and affidavit filed,
if he had not been a prisoner confined upon an indictment
for the larceny of the bullion which was the subject of the
action; and there is no pretense that the district judge was
not the proper officer to take the deposition. The whole
argument is confined to the two propositions, that the court
could not order the petitioner to be brought out of jail and
into court to give his deposition, and that he could not be
compelled to testify if his answers would expose his defense
to the indictment.

The provisions of the statute relating to the first proposi-
tion are contained in sections 1459, 1460, and 1461 of the
compiled laws, and counsel for the petitioner contends that
a proper construction of those three sections excludes the
notion that a prisoner can be brought out of jail in any
case for the purpose of giving his deposition. His deposi-
tion, it is said, must be taken in jail. He can only be
brought before the court for the purpose of testifying orally
at the trial. He contends further that if a prisoner can be
brought into court in any case for the purpose of taking his
deposition, the petitioner could not be so produced in this
case, because there was no affidavit filed to show what his
testimony was expected to be, or that it was material, as
required by section 1460. It is true there was no compli-
ance with the provisions of that section; and there is no
doubt that the affidavit filed by the attorney for the Meadow
Valley company failed to make out a case for an order to
produce the prisoner before the court for the purpose of

having his deposition taken, even if such an order is proper in any case—a question we think it unnecessary to decide. It seems perfectly clear, however, that the order for his production in court is a matter of which the petitioner is not entitled to complain, and that the jurisdiction of the court to take his deposition did not depend upon the validity of that order. The two things are entirely distinct. A party to a civil action has a perfect right to take the deposition of his adversary whether he is in or out of jail. But when he is in jail the aid of a court, or judge, is necessary in order to obtain access to him there, or to secure his production in court. A judge is not bound to make an order for that purpose, and ought not to do so unless the ends of justice require it; and the evidence requisite for showing that the order is necessary is an affidavit setting out the testimony that is expected from the prisoner and its materiality.

But the law which provides for such an affidavit was never designed for the protection of the prisoner, but only to prevent improper and unnecessary interference with the custody of prisoners. The sheriff is responsible for their safe keeping, and the law very properly provides that he shall not be obliged to produce them in court, or admit strangers to see them in jail, unless an important purpose is to be subserved. But when he obeys an order to produce a prisoner in court, although it may have been improvidently granted, it is no concern of the prisoner that his jailer has been more compliant than he was obliged to be. He is actually in court, and, being there, may be sworn as a witness in the same manner as if he had attended in obedience to a subpœna. (Comp. Laws, sec. 1453.) His right to stay in jail is not so sacred as to invest him with any greater privilege than other persons who happen to be present. The order to produce him performs exactly the same function as a subpœna in the case of a witness who is at large, and certainly it would not be contended if a witness has come into court in obedience to a subpœna substantially defective, or improperly served, that he cannot be compelled to testify. It is equally clear that, in this case, the witness

being before the court, was bound to answer any question that he would have been required to answer if the process for getting him there had been strictly pursued.

This being so, it was for the court to decide what questions he should answer, and even if it erred in its decision upon that matter, it was but an error, and not an excess of jurisdiction. If the witness refused to answer when the court decided he should answer, it was a contempt, and punishable as such. (Comp. L. sec. 1521, fourth clause.)

Even if we had the power to review the rulings of the district court as to the legality and pertinency of the questions which the petitioner refused to answer, our conclusion would be the same. All the questions appear to have been material and strictly relevant, and the petitioner was bound to answer them, unless he chose to put himself upon his privilege not to criminate or degrade himself. But that excuse he expressly disclaimed. His position was, that the law protected him in his assumed privilege of concealing the means by which his innocence was to be made apparent. We are not, however, aware of any such provision in the law. It is true, that in the ordinary course of criminal proceedings, the defendant is enabled to conceal the grounds of his defense until the prosecution has made a *prima facie* case before the jury; but this is merely an incident to the course of those proceedings, and not in any true sense a privilege. As a defendant in a criminal action he can stand upon the presumption of his innocence, and is not bound to offer any defense until a case has been proved against him; but as a party to a civil action his privilege is just the same whether he has been indicted or not: he can only refuse to answer when his answers would tend to criminate or degrade him, and he must himself invoke the privilege. (Comp. L., sec. 1455.) This is the plain rule of the statute, and there is no public policy superior to the rule. To conceal his defense till the day of trial is, no doubt, a valuable privilege to a criminal, for it will often deprive the state of all opportunity of exposing its falsity, but it is difficult to see how it is to benefit an innocent defendant, who relies upon the truth for his vindication, unless it is as-

sumed that the state will suborn false witnesses for the purpose of destroying him.

This disposes of the first two points of the petitioner. The remaining question is: Did the court exceed its jurisdiction in imposing the penalties? The striking out of the petitioner's answer to the complaint of the Meadew Valley company for refusal to testify, was authorized by the express language of the statute. (Comp. L., section 1456.) If the law is constitutional—and there is no suggestion to the contrary—the respondent, in striking it out, certainly did not exceed his jurisdiction. But whether he did or not is not to be decided in this proceeding. The striking out of the answer was an order made in the civil case of the *Meadow Valley Mining Co.* v. *Maxwell*, and not in the criminal proceeding for contempt. It may, therefore, be reviewed on appeal from the judgment in that case, and consequently cannot be reviewed on certiorari. In one particular, however, we think there was an excess of jurisdiction: The statute concerning contempts is a penal statute, and must be strictly construed in favor of those accused of violating its prohibitions. Upon that principle at least, if not upon more liberal principles of construction, the mere refusal of a witness to testify on the same trial of the same issue cannot be deemed more than one contempt, no matter how many questions he may refuse to answer. Otherwise, there would be no limit to the amount in which he might be fined. But it is the manifest purpose of the statute to limit the amount of the fine to be imposed for any one contempt of court to the sum of five hundred dollars—a purpose that would be completely frustrated if the court, by repeating or multiplying questions, could multiply contempts. The district judge erred in finding that each separate refusal to answer a question was a distinct contempt; and in imposing fines which, in the aggregate, exceeded five hundred dollars, he exceeded his jurisdiction. I think his order should be modified by remitting all of the fines in excess of five hundred dollars, and the petitioner should have a judgment for his costs.

HAWLEY, C. J., concurring:

I concur in the conclusions reached by Justice Beatty upon the first two points discussed. With reference to the other question I am of opinion that in refusing to answer the various questions propounded to him (all being addressed to the same point), the petitioner was guilty of but one contempt, and that the court had jurisdiction to impose but one sentence.

The orders of the court were made subsequent to the taking of the deposition, and are all included in one general order, as follows: "For the refusal by the defendant in not answering the first question propounded in the deposition commenced to be taken on the 9th day of October, A. D. 1875, before the court, and for the contempt in such refusal, it is ordered that the defendant A. W. Maxwell pay a fine of fifty dollars; and for the next refusal to answer and the contempt thereby committed, it is ordered that the defendant pay a fine of one hundred dollars; and for the third refusal and contempt thereby committed, he is ordered to pay a fine of two hundred dollars; and for the fourth refusal and contempt thereby committed, he is ordered to pay a fine of four hundred dollars; and for the fifth refusal and contempt thereby committed, it is ordered that defendant pay a fine of five hundred dollars; and for each subsequent refusal thereafter, and contempt thereby committed, it is ordered that the defendant pay a fine of five hundred dollars each."

Now if there was but one contempt, I think there could be but one valid sentence; and that when the court adjudged petitioner guilty of contempt and ordered him to pay a fine of fifty dollars it exhausted its jurisdiction, and had no further power in the premises. The subsequent orders were, in my judgment, entirely null and void.

I am of the opinion that the judgment should be modified so as to conform to the views I have expressed.

EARLL, J., concurring:

I concur in the judgment as modified by Chief Justice Hawley.