**UNITED STATES v. EMSPAK (and nineteen other cases).**

Nos. 1742–1753, 1796, 1797, 1799, 1785, 1786, 1787, 1824.

United States District Court
District of Columbia.

Jan. 31, 1951.

See also 95 F.Supp. 1010.

Charles B. Murray, Washington, D. C., and William Hitz, Asst. U. S. Attys., for the United States.

Allan Rosenberg, Washington, D. C., David Scribner, New York City, for defendent Emspak.

Allan Rosenberg, Washington, D. C., and David Scribner, New York City, for defendants Fitzpatrick, Quinn and Matles.

Joseph Forer, David Rein, Washington, D. C., for defendant Bart.

Allan Rosenberg, Washington, D. C., and David Scribner, New York City, for defendants Panzino and Raley.

Joseph Forer, Washington, D. C., for defendant Branca.

Joseph Forer, Washington, D. C., and Albert L. Colloms, New York City, for defendant Hiskey.

Allan Rosenberg, Washington, D. C., and David Scribner, New York City, for defendant Tice.

David Rein, Washington, D. C., for defendant Hashmall.

Joseph Forer, Washington, D. C., and Benedict Wolf, New York City, for defendant Berman.

Ralph E. Powe, Washington, D. C., and Milton H. Friedman, New York City, for defendant Nelson.

Harry C. Lamberton, Washington, D. C., for defendant Lomanitz.

Frank Scheiner, New York City, and A. J. Spero, Washington, D. C., for defendant Scherer.

Harry C. Lamberton, Washington, D. C., for defendant Bohm.

Harold I. Cammer, New York City, for defendant Field.

Joseph Forer, Washington, D. C., for defendant Jaffe.

John Rogge, New York City, and Ralph E. Powe, Washington, D. C., for defendant Patterson.

KIRKLAND, District Judge.

The first sixteen above-named defendants were indicted by the Grand Jury of this Court for contempt of Congress, 2 U.S.C.A. § 192, for failure to answer questions before a duly created sub-committee of the Committee on Un-American Activities of the House of Representatives, pursuant to Section 121(b) of the Legislative Reorganization Act of 1946, subsection (q) (2), Rules of House of Representatives, rule 11, 60 Stat. 828, and House Resolution 5 of the 81st Congress; the last three above-named defendants were indicted by the Grand Jury of this Court for contempt of Congress for failure to answer questions before a duly created sub-committee of the Committee on Foreign Relations of the United States Senate which was conducting hearings pursuant to Senate Resolution 231, 81st Congress, 2nd Session. Title 2, Section 192, of the United States Code Annotated provides: "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, * * * or any committee of either House of Congress; *willfully makes default*, or who, *having appeared, refuses to answer* any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor * * *." (Emphasis supplied.)

Defendants herein have filed motions to dismiss the indictments pursuant to Rule 12 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Each indictment contains several counts ranging up to as high as 68 counts in one case. Counsel for defendants urge that these indictments are duplicitous in that they charge one crime in several counts and also that they put the defendant in jeopardy of being convicted and punished more than once for the same act. The Government counsel argues that since the statute, 2 U.S.C.A. § 192, supra, defines the crime as the refusal to answer "any question", then each refusal to answer a different question would be a separate violation.

■ In Upshaw v. United States, 10 Cir., 1946, 157 F.2d 716, the Court set out the test for determining the identity of offenses as follows: "And the generally recognized test for determining whether the offenses charged in two or more indictments or in different counts of the same indictment are identical or separate is whether the same proof would sustain a conviction under both or whether each requires proof of one or more facts which is not required of the others. Blockburger v. United States, 284 U. S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Gilmore v. United States, [10 Cir., 124 F.2d 537]." Id., 157 F.2d at page 717.

■ As contended by the United States in this proceeding if a witness refuses to answer any question he has violated the statute. Clearly it is necessary to prove a different fact to sustain the charge for each different question. Applying the above test to the indictments in these cases, the refusal to answer each question must be charged in a separate count since the same proof would not sustain a conviction under each count, and an indictment charging more than one offense in any one count is as defective as an indictment charging a single offense in multiple counts. In several recent cases involving contempt, indictments setting forth the several questions which the defendants refused to answer were held valid. Alexander v. United States, 9 Cir., 1950, 181 F.2d 480; Doran v. United States, 9 Cir., 1950, 181 F.2d 489; Kasinowitz v. United States, 9 Cir., 1950, 181 F.2d 632, 633; Trumbo v. United States, 1949, 85 U.S.App.D.C. 167, 176 F.2d 49.

Counsel for defendants go a step further, however, and urge that a conviction on each count would allow the Court to incarcerate some of these defendants for the balance of their lives. Although the problem of the

sentence after conviction is not before the Court at this time, it does appear that a short discussion of this problem as collateral to the allegation of duplicity may be helpful.

Diligent effort on the part of counsel has produced a series of cases which are pertinent here. One of the earliest cases to consider this precise problem was Maxwell v. Rives, 1876, 11 Nev. 213. In this case the defendant was held in contempt of court for refusing to answer a number of questions. In considering the trial court's action in imposing a separate penalty for each refusal the court said: "A penal statute must be strictly construed. Upon that principle at least, if not upon more liberal principles of construction, the mere refusal of a witness to testify on the same trial of the same issue cannot be deemed more than one contempt, no matter how many questions he may refuse to answer * * * The district judge erred in finding that each separate refusal to answer a question was a distinct contempt * * *." Id., 11 Nev. at page 221. The Court there cited People ex rel. Tweed v. Liscomb, 1875, 60 N.Y. 559, in which opinion may be found a collection of English and early American cases which involved multiple penalties for a single act.

Recently the United States District Court for the District of Hawaii considered indictments identical in substance to those before the Court now, and that court held in respect to the multiple count indictments as follows: "As to objections to the number of Counts, the Court is of the opinion that the Government has the right to frame each refusal to answer in a separate Count. Rule 8 Federal Rules of Criminal Procedure, 18 U.S.C.A. However, as the questions appear to be directed all to one subject of inquiry and the answers were simultaneous during the proceedings, and continuous acts, the indictments therefore charge only one alleged offense. Kerr v. Squier, 9 Cir., 151 F.2d 308; Price v. United States, 5 Cir., 150 F.2d 283–285; Upshaw v. United States, 5 Cir., 157 F.2d 716, strongly indicate that no matter how many refusals to answer may occur in an examination such as is alleged, the max-

imum sentence that could be imposed pursuant to the Statute involved, Sec. 192, Title 2, U.S.C.A., would be punishment for not more than one refusal." United States v. Yukio Abe, D. C., —— F.Supp. —— Accordingly, the District Court of Hawaii refused to dismiss the indictments on the ground of duplicity, and deferred ruling on the motion to dismiss until after a trial on the general issue.

Two recent State cases, Fawick Airflex Co. v. United Electrical, Radio & Machine Workers of America, 1950, Ohio App., 92 N.E.2d 431, 436 and People ex rel. Amarante v. McDonnell, Sup. 1950, 100 N.Y.S.2d 463, considered a charge of separate contempts for refusal to answer a series of questions. Both courts held that only one contempt was committed and the defendant could receive only the maximum penalty for one contempt after conviction. In the Fawick case, the court rationalized the problem as follows:

"As heretofore noted in this opinion, the appellant was found guilty of three separate acts of contempt based upon his refusal to answer three separate questions.

"It appears to the members of this court that the questions were of such character that they should be treated as an inquiry into but a single subject. The first question asked the witness directly was whether he was a member of the Communist Party. When he refused to answer, other questions were then asked, which, if answered in the affirmative, would have established an inference that he was such a member. In fact, the entire inquiry was directed toward the establishment of but one fact. The witness' refusal to answer the three questions under discussion constituted, in the opinion of the members of this court, but a single contempt, for the reason that they all had to do with the same subject matter." [92 N.E.2d 436.]

The New York court considered the problem in the same light, saying:

"The question then presents itself as to whether or not by refusing to answer seven questions relating to the same subject matter the relator was guilty of seven separate and distinct contempts. If this question be

1016

answered in the negative, then the County Judge acted in excess of the jurisdiction conferred upon him in sentencing the relator to a term in excess of the maximum provided by law for a criminal contempt.

"The court is of the opinion that the relator committed but one contempt. To hold otherwise would enable a prosecutor to ask an unlimited number of questions concerning the same subject matter or even to ask the same question in various forms, with the net result that a witness might be incarcerated for the balance of his life." [100 N.Y.S.2d 467.]

The New York statute on contempt is the Judiciary Law, McK. Consol. Laws, c. 30, § 750, which reads:

"A court of record has power to punish for a criminal contempt, a person guilty of either of the following acts, and no others:

"* * * 5. Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, *to answer any legal* and proper interrogatory." (Emphasis supplied.)

Title 2 U.S.C.A. § 192, supra, uses the word "any" in the same sense as the New York statute, yet the indictment in the Amarante case was not held defective for duplicity. The court in these two cases obviously directed their concept of the singleness of the offense to the imposition of the penalty.

In Trumbo v. United States, supra, the indictment was in two counts consisting of two separate questions which defendant had refused to answer. The court, 85 U.S.App. D. C. at page 169, 176 F.2d at page 51, said, referring to two defendants, Lawson and Trumbo: "Both trials resulted in convictions and the imposition of the maximum sentence allowed by 2 U.S.C.A. § 192 of one year imprisonment and $1,000 fine". The court without discussing the problem obviously approved conviction under the two count indictment and also imposed a sentence of the maximum penalty for a single contempt. That decision is binding upon this Court, and it is also well supported as pointed out by the foregoing discussion.

▉ The counts involved in the several indictments under consideration consist of questions which apparently on their face were directed to one single line of inquiry which was the specific phase of inquiry then being considered by the Committee. As noted previously, each question requires proof of a different fact; therefore, the questions must be set out in different counts. This being so, the indictments are not duplicitous. Proof which would sustain any single count will sustain a conviction for contempt as charged. The question of double jeopardy will arise only if a defendant is sentenced on more than one count. Since only one contempt is charged in each indictment, the rationale of the decisions discussed above would seem to limit the sentence to a maximum penalty for one contempt. The objection is academic and premature at this stage, however, but may be raised if a sentence for more than one refusal is imposed.

Counsel have also argued that the claim of protection against self-incrimination embodied in the Fifth Amendment entitles a witness before a Congressional committee to an immunity which will support a dismissal of an indictment charging violation of 2 U.S.C.A. § 192 prior to a trial of the general issue. This contention raises a procedural question, the solution to which requires a consideration of the preliminary facts, which must be established as a matter of law to support the granting of such a motion.

The necessity for the right of a legislature to conduct inquiries as an aid to the legislative process is more critical now than at any time in the history of the world. The complexities of our present economy, the attempts of modern statesmen to achieve international unity and the recurrence of the concept of a balance of power throughout the world render any single group of men incompetent to deal with the legislative process without the aid of detailed inquiries into the fields of prospective legislative control. Such responsibility as falls on the members of our legislatures, demands the authority to compel disclosures of pertinent information relative to the requirements of the law making process.

In the formation of the Constitution of the United States, the citizens of the several states were anxious that their individual

liberties, so recently gained by the American Revolution and which they had protested to the imperial heads of England, should not be lost in the untried Federal Government which the Constitution established. Accordingly, the first ten amendments were voted at the outset of the ratification of the Constitution, and they apply strictly to the Federal Government. The Fifth Amendment declares: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; *nor shall be compelled in any criminal case to be a witness against himself,* nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." (Emphasis supplied.) In the early stages of the development of the common law, a defendant in a criminal case was not permitted to testify nor be represented in court by counsel. When one further considers that the grand jurors were persons who had actual knowledge of commission of crimes in their locality and were assembled in advance of the king's justices, then moving in circuits, one can understand the reluctance of the American colonists to permit the Federal Government to compel a defendant in a criminal case to give testimony against himself. It was anciently established that no person should be compelled to give testimony against himself. This came about as orderly progression of the growth of criminal procedure as a part of the common law. However, it appears to be of more recent origin than the next point to be discussed insofar as the ratification of the Constitution was concerned.

Growing up with the development in the criminal law, but ancient by many years, was the proposition that there was an inherent right in Government to subpoena and inquire of citizens concerning activities for which legislation was necessary. This information was then, as it is now,

vital to the legislative process. The earliest instances of punishment visited by the House of Commons upon contumacious and prevaricating witnesses summoned before Parliamentary inquiries related to disputed elections. The earliest recorded instance appears in the year 1586. Later, in 1604, in Sir Francis Godwin's case, where Parliament was inquiring into election irregularities, it was stated: "Power given in that Case to send for an Officer, and to view and search any Record or other thing of that kind, which may help their Knowledge or Memory in this particular Service". On June 4, 1621, Randolph Davenport was imprisoned for misinforming a committee before whom he was called as a witness. There was a Parliamentary investigation in 1688 into the conduct of the war in Ireland. There also appears to have been legislative power as early as 1789 in the American colonies, and it was well entrenched when the Constitution was ratified. Undoubtedly the framers had its ancient origin in mind as it laid the framework of the American Federal Government.

These two streams of social control flowed parallel to each other in their development through the centuries. This development has been the subject of careful study by many scholars, and is thoroughly discussed in *Landis, Constitutional Limitations on the Congressional Power of Investigation,* 40 Harvard Law Review 153 (1926). It is now well established that Congress has the power to compel pertinent disclosures. McGrain v. Daugherty, 1927, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580; also that a Congressional inquiry may be as broad as the legislative purpose requires Townsend v. United States, 1938, 68 App.D.C. 223, 95 F.2d 352; and that a legislative purpose will be presumed in authorizing a Congressional investigation. In re Chapman, 1897, 166 U.S. 661, 17 S.Ct. 677, 41 L.Ed. 1154. The pertinency of the evidence is not determined by its probative value, and like the question of relevancy in a trial, it is a question of law; but the witness may be punished if he mistakes the law, since the issue of good faith is not involved. Sinclair v. United States,

1929, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692. The witness of course must be properly before the committee either by reason of service of process or by voluntary appearance. The procedure before the committee is informal, but precedent has fully established the practice of informing a witness of his rights of immunity at the hearing. A claim of immunity under the Fifth Amendment is personal to the witness. Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.

■ If there has been any doubt that the Fifth Amendment applies to testimony before Congressional committees, it has been dispelled by many decisions, and in fact, was recognized by Congress itself in 1857 when it enacted an immunity statute, 11 Stat. 155, from which R.S. § 859, codified in 18 U.S.C.A. § 3486, stems. It provides: *"No testimony* given by a witness before either House, or before any committee of either House, or before any joint committee established by a joint or concurrent resolution of the two Houses of Congress, *shall be used as evidence in any criminal proceeding* against him in any court, except in a prosecution for perjury committed in giving such testimony. But an official paper or record produced by him is not within the said privilege." (Emphasis supplied.)

The avowed purpose of that Act was to "enforce the Attendance of Witnesses * * * and to compel them to discover Testimony". Congress thus sought to compel testimony which might be protected by the Fifth Amendment by granting the immunity of R.S. § 859. To this day that section remains virtually as enacted as 18 U.S.C.A. § 3486, untested by Court decision although relegated to a doubtful status by United States v. Bryan, 1950, 339 U.S. 323, 70 S.Ct. 724. In that case the court considered section 859 by analogy to R.S. § 860, a statute identical in all material respects with R.S. § 859, and which was considered in Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. The court in this latter case held that R.S. § 860 was not an adequate substitute for the protection of the Fifth Amendment regarding self-incrimination.

In United States v. Bryan, supra, Mr. Chief Justice Vinson, speaking for the majority of the Court, went beyond the issues involved to indicate that R.S. § 859 is no more of a substitute than was R.S. § 860. The Congress repealed R.S. § 860 in 1910.

On the other hand, immunity statutes have been enacted in regard to administrative hearings which do afford an adequate substitute for the Fifth Amendment. In United States v. Eisele, 1943, 52 F.Supp. 105, decided by Judge Pine of this District Court, a prosecution was barred because of testimony given under the immunity of 15 U.S.C.A. § 77v (c). Similarly, in Smith v. United States, 1949, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264, a prosecution was barred by the immunity of 49 U.S.C.A. § 46. The two immunity statutes cited above contain the words "no person shall be prosecuted * * * for or on account of any transaction, matter or thing, concerning which he may testify". This remission of responsibility for criminal acts met the absolute test of the constitutional provision against self-incrimination as early as Brown v. Walker, supra, and as recently as Smith v. United States, supra. This type of immunity statute is clearly broader than the phrase "No testimony given by a witness" which is used in R.S. § 859. There is no doubt that Congress can elicit self-incriminating testimony from a witness provided the witness is offered, in exchange, an immunity from prosecution which is as broad as the Fifth Amendment.

■ An exhaustive review of cases which require the immunity statute to be as broad as the protection of the Fifth Amendment is contained in 118 A.L.R. 605. It should also be noted that the Fifth Amendment does not give immunity against a State prosecution, as it does against a Federal prosecution. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210.

■ Questions which do not, on their face, require incriminating answers necessitate placing the burden of proof on the witness to show he had substantial reason to believe they demand answers tending to incriminate him. Counselman v. Hitch-

cock, supra; United States v. Rosen, 2 Cir., 1949, 174 F.2d 187, certiorari denied 338 U.S. 851, 70 S.Ct. 87. Several recent cases have identified specific types of questions as per se calling for incriminating answers. Alexander v. United States, supra; Kasinowitz v. United States, supra; Blau v. United States, 340 U.S. 159, 71 S.Ct. 223. The Alexander case points out that a question such as "Do you know John Doe?" while not necessarily calling for an incriminating answer, will be held as incriminatory in character upon a showing that any connection with John Doe will subject the witness to a criminal charge of any sort. In addition, the Court is required to take the question in its setting, including other questions asked of the witness. United States v. Weisman, 2 Cir., 1940, 111 F.2d 260. The witness must specifically claim his privilege under the Fifth Amendment, not merely decline to answer the question. Arbitrary or fanciful claims of privilege, however, will not be sustained.

■ It is clear by now that numerous aspects of the proceedings must be proved to the Court to allow the Court to intelligently decide the issues which may well resolve themselves into questions of law. For example, the use of newspaper clippings has been sanctioned as admissible to show a reasonable apprehension of incrimination, Alexander v. United States, supra; United States v. Weisman, supra, yet this type of evidence must be received with caution. It will certainly not be noticed judicially but must be introduced subject to objections as to relevancy, authenticity and the usual objections to documentary evidence. On a pre-trial motion to dismiss, similar to the motions presented in the cases under consideration here, Judge Caffey of the United States District Court for the Southern District of New York ruled that the procedure in the resolution directing the certification of a case under 2 U.S.C.A. § 192 to the United States Attorney would not be considered on a motion to dismiss, but would be reserved as a matter of defense at the trial. His opinion is reported in United States v. Josephson, D. C. 1947, 74 F.Supp. 958, affirmed, in an opinion which did not dis-

cuss this point, 2 Cir., 165 F.2d 82, certiorari denied 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122. It should also be noted that the U.S. District Court for the District of Hawaii in the case of United States v. Yukio Abe, 95 F.Supp. 992, took cognizance of these problems in deferring a ruling on a motion to dismiss identical to those presented here until the trial of the general issue. Nothing but confusion would result from trying these cases in a piecemeal manner. These several motions to dismiss may undoubtedly be raised with propriety during the course of the trial when there is sufficient evidence before the Court to show the incriminating characteristics of the answers as well as the proper claim of immunity. However, the Court is not in a position to resolve the issues as a question of law at the present stage of the proceedings, and the several motions to dismiss are accordingly overruled.