UNITED STATES of America

v.

WALDBAUM, INC., King Kullen Grocery Co., Inc., Supermarkets General Corporation, Inc. and Lamm Food Corp., Defendants.

UNITED STATES of America

v.

WALDBAUM, INC. and Supermarkets General Corporation, Inc., Defendants.

Crim. Nos. CR 84–00348, CR 84–00349.

United States District Court, E.D. New York.

Sept. 4, 1984.

Rogers & Wells, New York City, for defendant King Kullen Grocery, Co., Inc.

Hughes, Hubbard & Reed, New York City, for defendant Supermarkets General Corp.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for defendant Lamm Food Corp.

Wilkie Farr & Gallagher, New York City, for defendant Waldbaum, Inc.

Department of Justice, Antitrust Div., New York City, for plaintiff.

## MEMORANDUM AND ORDER

ALTIMARI, District Judge:

Defendants Waldbaum, Inc., King Kullen Grocery Co., Inc., Supermarkets General Corporation, Inc., and LAMM Food Corp. move pursuant to Fed.R.Crim.P. 12(b) to dismiss the indictments in the above captioned cases on the ground that they were returned by a biased grand jury. In a companion motion, defendants seek an order allowing them to excuse for cause any petit juror who is a high volume coupon user or who regularly used coupons at their stores during the time period covered by the indictments. In addition, they request the Court to conduct extensive *voir dire* concerning potential jurors' shopping patterns and coupon usage.

## FACTS

Defendants argue that the indictments in question were returned by a biased grand jury because the majority of grand jurors would perceive themselves as victims of the conspiracy alleged in the indictments. Their argument, set out at page three (3) of their moving memorandum of law, goes as follows:

"In spite of the fact that the majority of persons in Nassau and Suffolk Counties would regard themselves as victims of an alleged conspiracy to terminate double and triple coupons—whether or not there was evidence of such a conspiracy and whether or not it was actually illegal—

the grand jury which returned these indictments was convened in the United States District Court for the Eastern District of New York, which draws its grand jurors in substantial part from Nassau and Suffolk Counties, and thus was composed of the very people who were victims of the alleged crime they were investigating. Yet the Government has admitted that it made *no* effort to question jurors about shopping habits or to eliminate heavy users of coupons or users of coupons at any of the food retailers being investigated from the grand jury, choosing instead only to exclude employees of retail grocers."

Memorandum in Support of Defendants' Joint Motions to Dismiss the Indictments Because of Grand Jury Bias at 3, (hereinafter "Defendants' moving memorandum of law").

In support of their position, defendants offer the affidavit of Larry Salinas, director of research for defendant Supermarkets General Corporation, Inc. ("SGC"). Mr. Salinas states that Pathmark, a division of SGC, regularly conducts random telephone surveys of consumers on Long Island. (Salinas Affidavit par. 3). He tells us that data from surveys conducted in 1983 shows the following:

(1) 77% of all shoppers in Nassau and Suffolk Counties use one of defendants' stores as a preliminary source of groceries. (*Id.*); and

(2) In his conservative estimate, 90% of all shoppers in Nassau and Suffolk Counties will shop at one of the defendants' stores at least once a year. (*Id.* par. 4)

Based on "[n]ational studies[1] [showing] that seventy to eighty percent of all consumers use coupons occasionally," he estimates that during the time period of the indictments," at least 60 to 75% of all household units in Nassau and Suffolk Counties used a coupon at one of defendants' stores, and would, therefore, be likely to consider themselves as having been de-

1. The "national studies" are neither supplied to the Court nor identified.

prived of the opportunity to double or triple their coupon values by the actions charged in the indictments." (*Id.* par. 6–7)

## DISCUSSION

### A.

As defendants made clear during oral argument before the Court, they do not seriously contend that everyone on the grand jury was biased, nor do they contend that any single grand juror was necessarily biased. Rather, relying on Pathmark's consumer survey results they insist that someone on the grand jury must have been biased. *Cf. United States v. Thomas*, 632 F.2d 837, 846 (10th Cir.), *cert. denied sub nom. Harris v. United States*, 449 U.S. 960, 101 S.Ct. 373, 66 L.Ed.2d 227 (1980) ("The defendants state that the grand jury may not have been unbiased due to its exposure to [ ] news stories. This falls short of the allegation that the grand jury was biased.")

### I.

Defendants principally rely on results of Pathmark conducted consumer surveys. Most fundamentally, however, defendants' motion papers fail to append a copy or report of even one such "regularly" conducted survey.[2] In fact, the Court is simply informed that surveys were conducted and data was accumulated. Further, we are left to guess as to the methodology of the surveys, and, therefore, their trustworthiness, since defendants offer no information with regard to how the tests were conducted, other than they were random telephone surveys of consumers on Long Island. Needless to say, Mr. Salinas' affi-

davit falls far short of establishing a proper factual and statistically valid basis for the legal conclusions defendants ask us to reach.[3]

### II.

In any event, and even were we to accept Pathmark's survey results, the motion must be denied as a matter of law.

Rule 6(b)(2), Fed.R.Crim.P., provides in relevant part that:

"A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror, if not previously determined upon challenge.... An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record ... that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment."

Recognizing that a preliminary draft of Fed.R.Crim.P. 6(b)(1) would have specifically authorized challenge of grand jurors on the grounds of bias or prejudice, but that such a provision was omitted from the final draft, *see* 1 Wright, *Federal Practice and Procedure*, § 102, at 208–09 (1982), a number of courts have held that no attack for bias will lie against the grand jury or jurors. *See e.g., Estes v. United States*, 335 F.2d 609 (5th Cir.1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656 (1965); *In re Balistrieri*, 503 F.Supp. 1112 (E.D. Wis.1980); *United States v. Partin*, 320 F.Supp. 275 (E.D.La.1970); *see also, In re Grand Jury of Southern District of Alabama*, 508 F.Supp. 1210 (S.D.Ala.1980);

---

**2.** A single exhibit is offered by defendants in support of the motions. Described as a Long Island Study independently conducted by Belden Associates for Newsday in 1982–1983, Mr. Salinas states that the study supports Pathmark's own data.

The report, described on its face as "A Special Report for Pathmark—Analysis of the Pathmark Shoppers and Readership in Newsday and New York Newspapers," states clearly that it was prepared by the Newsday Research Department based on Belden Associates' Long Island Study, 1982–1983. More importantly, the report sim-

ply substantiates none of Pathmark's own survey results, instead taking the form of an advertisement or marketing tool for Newsday. For example, the last page of the report purports to set out in bold print what Pathmark misses by not using Newsday. Quite simply, at best the exhibit is unremarkable.

**3.** The government neither concedes nor challenges the correctness of defendants' statistics. Rather, it takes the position that even if correct, the motion should be denied as a matter of law.

*United States v. Commonwealth of Pennsylvania,* 316 F.Supp. 411 (E.D.Pa.1970); *United States v. Knowles,* 147 F.Supp. 19 (D.D.C.1957). Notwithstanding the aforementioned cases, it is settled that the Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury. *Lawn v. United States,* 355 U.S. 339, 349–50, 78 S.Ct. 311, 317–18, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956); *United States v. Burke,* 700 F.2d 70, 82 (2d Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *see generally,* Bartlett, *Defendant's Right to an Unbiased Federal Grand Jury,* 47 B.U.L.Rev. 551 (1967).[4] "The grand jury need not deliberate in a sterile chamber, however, to satisfy this constitutional guarantee," *United States v. Burke, supra,* 700 F.2d at 82, and defendants moving to dismiss an indictment bear the heavy burden of demonstrating actual grand jury bias and prejudice. *See id., United States v. Meyers,* 510 F.Supp. 323, 325–26 (E.D.N.Y.1980); *see also, United States v. Fuentes,* 432 F.2d 405, 407 (5th Cir.1970) (Wisdom, J.) (where defendant claimed that the indictment was invalid since it was returned by a grand jury of which he formerly was a member, the Court held that "the general rule is that unless the defendant makes a factual showing that the grand jury was biased, the indictment will not be invalidated."); *Castle v. United States,* 238 F.2d 131, 136 (8th Cir.1956); *United States v. Remington,* 191 F.2d 246, 252 (2d Cir.1951); *United States v. Anzelmo,* 319 F.Supp. 1106, 1113 (E.D.La.1970); *United States v. Fujimoto,* 102 F.Supp. 890, 896 (D. Hawaii 1952); *United States v. Emspak,* 95 F.Supp. 1012, 1012 (D.D.C.1951). Stated otherwise, it must be shown that the grand jury failed in its sworn duty to act with impartiality.

 Here, defendants fail to point to a scintilla of evidence of actual grand jury bias or prejudice. On the contrary, the only specific incident cited is where "one of the grand jurors told [a grand jury] witness that he had missed one of King Kullen's stores in New Hyde Park in a list the witness had given ...." Defendants' moving memorandum of law at 8 n. 3. This incident, defendants reason, demonstrates "undoubtedly" that the grand jurors were acutely aware of defendants' stores. Whatever the above noticed incident does demonstrate—though it appears self-evident to the Court that it shows nothing more than one of the grand jurors was aware that King Kullen maintained a store in New Hyde Park—, it does not demonstrate actual grand jury bias or prejudice and is clearly insufficient to warrant dismissal of the indictment.

### III.

Unable to demonstrate actual grand jury bias and prejudice, defendants maintain that the grand jury was presumably biased since, in their words, the grand jury was composed of the very people who were victims of the alleged crime they were investigating.

To begin with, it is not clear that 60–75% of the grand jurors from Nassau and Suffolk Counties shopped at one of defendants' stores with a coupon during the period covered by the indictments. *See* p. 969 *supra.* Most certainly, it is not at all clear that over half of the grand jurors were users of coupons at defendants' stores in Nassau and Suffolk Counties during the period of the indictments, as defendants

---

4. *See also, United States v. Pabian,* 704 F.2d 1533 (11th Cir.1983); *United States v. Serubo,* 604 F.2d 807 (3d Cir.1979); *Coppedge v. United States,* 311 F.2d 128 (D.C.Cir.1962) (Burger, J.,) *cert. denied,* 373 U.S. 946, 83 S.Ct. 154, 10 L.Ed.2d 701 (1963); *United States v. Dorfman,* 532 F.Supp. 1118 (N.D.Ill.1981); *United States v. Gold,* 470 F.Supp. 1336 (N.D.Ill.1979); *United States v. Samango,* 450 F.Supp. 1097 (D. Hawaii 1978), *aff'd on other grounds,* 607 F.2d 877 (9th Cir.1979); *United States v. Provenzano,* 440 F.Supp. 561 (S.D.N.Y.1977); *United States v. Sweig,* 316 F.Supp. 1148 (S.D.N.Y.1970), *aff'd,* 441 F.2d 114 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *United States v. DiGrazia,* 213 F.Supp. 232 (N.D.Ill. 1963).

suggest.[5] More importantly, without reaching the question of what circumstances, if any, would warrant a presumption of grand jury bias and prejudice, we conclude that bias and prejudice may not be presumed in this case.

To suggest that a grand juror who shopped at one of defendants' stores with a coupon during the period covered by the indictments must necessarily have been biased and prejudiced against defendants, presumes a bit too much. It is manifestly unreasonable to presume that such a grand juror would be unable to act impartially. While the opportunity lost to double one's savings on Hunts Ketchup unquestionably would disappoint many a cost conscious shopper, from an objective point of view it lacks the potential for substantial emotional involvement, adversely affecting impartiality, necessary to presume bias on the part of affected grand juror shoppers. *See e.g., United States v. DeLillo*, 620 F.2d 939, 948 (2d Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980) (petit jury); *United States v. Brown*, 540 F.2d 364 (8th Cir.1976) (petit jury); *United States v. Russo*, 480 F.2d 1228, 1244 (6th Cir.1973), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974) (petit jury).

Finally, if per chance one or more members of the grand jury was so disgruntled as to forsake his or her oath as a grand juror, then defendants may take comfort in the fact that "[i]f a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or in-

nocence." *Silverthorne v. United States*, 400 F.2d 627, 634 (9th Cir.1968), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971).

In sum, since there is no evidence of actual grand bias or prejudice and since such bias or prejudice will not be presumed, the motion to dismiss the indictments is denied.

### B.

With regard to defendants' companion motion, decisions as to which potential jurors should or should not be excused for cause will be made at the time of jury selection based on whether the potential juror could fairly and impartially hear the case and return a verdict based solely on the evidence.

As to the scope of *voir dire*, the Court will certainly inquire into the areas proposed by defendants and entertain, in this regard, suggested *voir dire* questions and a form of juror questionaire.[6]

### CONCLUSION

The motion to dismiss the indictments for grand jury bias is denied.

SO ORDERED.

---

**5.** As defendants recognize, the grand jury pool for the Eastern District of New York is not drawn exclusively from Nassau and Suffolk Counties. Thus, even accepting Pathmark's survey results, it is highly unlikely that more than half of the grand jurors, i.e., 50%, used a coupon at one of defendants' stores in Nassau or Suffolk Counties during the period of the indictments. More realistically, at least twelve (12) of the grand jurors were non-users of coupons at defendants' stores in Nassau and Suffolk and, in defendants' words, would not perceive themselves as victims of the conspiracy alleged in the indictments. Accordingly, since at least twelve

(12) of the grand jurors were "statistically" unbiased, the indictment obviously is valid. 1 Wright *Federal Practice and Procedure*, § 102, at 209–10 (1982) (an indictment is valid if twelve (12) unbiased grand jurors voted for it).

**6.** Since we have no reason to believe at this point in time that an unbiased jury cannot be empanelled in this district, we need not reach defendants' motion, made in the alternative, to transfer venue to the District Court for the Northern District of New York.