**UNITED STATES of America, Plaintiff,**

v.

**Morgan FINLEY, et al., Defendants.**

**Nos. 87 CR 364–3, 87 CR 364–4.**

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1988.

Ira Raphaelson, Michael Shephard, U.S. Atty's Office, Chicago, Ill., for plaintiff.

Philip Parenti, Chicago, Ill., for Clarence McClain.

Donald Bertucci, Chicago, Ill., for Perry Hutchinson.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Defendants Clarence McClain and Perry Hutchinson are two of the individuals charged in the FBI's "Operation Incubator" investigation into corruption in the award of public contracts by the City of Chicago. The factual background is set forth more fully in the Court's separate opinion concerning the substantive motions to dismiss brought by these and other de-fendants. This opinion addresses McClain's motion to dismiss the indictment for governmental misconduct, McClain's motion for disclosure of transcripts of the grand jury proceedings, Hutchinson's motion to dismiss the indictment for pre-indictment publicity, and McClain's motion to dismiss the indictment for pretrial publicity. For the reasons stated below, defendants' motions are denied.

### II. GOVERNMENTAL MISCONDUCT

In support of his motion to dismiss the indictment for governmental misconduct, McClain argues that the government engaged in outrageous conduct with respect to its use of an informant, that the government selectively prosecuted McClain, and that the government made prejudicial statements to the media.

The standards which a defendant must meet in order to justify the dismissal of an indictment for government misconduct are strict. First, the misconduct complained of must be egregious. "Assuming that no independent constitutional right has been violated, governmental misconduct must be truly outrageous before due process will prevent conviction of the defendant." *United States v. Kaminski*, 703 F.2d 1004, 1009 (7th Cir.1983). The Seventh Circuit has "not yet found conduct which was sufficiently outrageous to warrant the invocation of a due process bar." *United States v. Shoffner*, 826 F.2d 619, 626 (7th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 108 S.Ct. 356, 98 L.Ed. 2d 381 (1987). *See also United States v. Valona*, 834 F.2d 1334, 1343 (7th Cir.1987); *United States v. Bruun*, 809 F.2d 397, 409 (7th Cir.1987); *United States v. Kaminski*, 703 F.2d 1004, 1009 (7th Cir.1983).

Furthermore, the defendant must specifically demonstrate prejudice resulting from the misconduct:

[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant.... [D]ismissal of the indictment is appropriate only if it is established that the violations substantially influenced the grand jury's decision to

indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.

*Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988). *See also United States v. Wilson,* 715 F.2d 1164, 1169 (7th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *In re Perlin,* 589 F.2d 260, 266 (7th Cir.1978); *United States v. Dorfman,* 532 F.Supp. 1118, 1138 (N.D.Ill. 1981).

With these principles in mind, the Court turns to McClain's allegations.

### A. Use of Informants

*1. Michael Raymond.* Much of the evidence gathered by the government in this case apparently was obtained from Michael Raymond, also known as Michael Burnett. According to the indictment, Raymond had been employed since about December, 1983, by Systematic Recovery Services, Ltd. ("SRS") to obtain public contracts from the City of Chicago. Raymond became a government informant in July, 1984, after he was arrested on weapons charges, and he purported to continue acting on behalf of SRS. He met with a number of public officials and private individuals who claimed an ability to influence public officials. He allegedly made payments to a number of these individuals, including the defendants, and those payments form the centerpiece of this case.

■ Raymond reportedly has a history of criminal convictions and possible involvement in murders and other crimes for which he has never been formally charged. McClain argues that the government's use of Raymond as an informant, knowing that Raymond had a "violent and manipulative background," constituted misconduct so serious as to warrant dismissal of the indictment. Specifically, McClain argues that the government "unleashed" a murder suspect on the defendants, that the government failed to cooperate with local law enforcement agencies investigating Raymond's activities, that the government used Raymond to generate new crimes, and that the government failed to disclose to the grand jury that Raymond was suspected of murder. McClain argues that even if none of these acts in itself justifies dismissal, taken together they constitute such shocking conduct as to violate due process and necessitate dismissal. *See United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973).

Much of McClain's argument is disposed of by the fact that Raymond was allegedly involved in the scheme since the beginning of 1984, before he became a government informant. He was thus not "unleashed" on the defendants; they voluntarily associated with him.

Furthermore, undercover investigations by the government are a "recognized and permissible means of investigation," *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), and the informants used will, of necessity, rarely be model citizens. *See, e.g., United States v. Kaminski,* 703 F.2d 1004, 1009–10 (7th Cir.1983); *United States v. Myers,* 692 F.2d 823 (2d Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983). "In the pursuit of crime the Government is not confined to behavior suitable for the drawing room.... The creation of opportunities for crime is a nasty but necessary business." *United States v. Murphy,* 768 F.2d 1518, 1529 (7th Cir. 1985). For these reasons, it is not clear in this circuit that dismissal would be an appropriate remedy even if the government's conduct were outrageous. The Supreme Court has held simply that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Russell,* 411 U.S. at 432–33, 93 S.Ct. at 1643. "[The Seventh] [C]ircuit has also left the possibility open, although we have never reversed a conviction on this ground." *United States v. Swiatek,* 819 F.2d 721, 725 (7th Cir.1987).

McClain relies on such cases as *United States v. Valdovinois–Valdovinois,* 588 F.Supp. 551 (N.D.Cal.1984), *rev'd on other grounds,* 743 F.2d 1436 (9th Cir.), *cert.*

*denied,* 469 U.S. 1114, 105 S.Ct. 799, 83 L.Ed.2d 791 (1985), and *United States v. Ramirez,* 710 F.2d 535 (9th Cir.1983). These cases, however, establish only that dismissal is appropriate where the government involvement was so fundamental that the government itself "created" or "manufactured" the crime. *See United States v. Belzer,* 743 F.2d 1213, 1217 (7th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 781 (1985); *Valdovinois–Valdovinois,* 588 F.Supp. at 556. Where, as here, the allegations raised by the defendant do not rise to such a level, dismissal is unwarranted.

The asserted lack of cooperation between the FBI and local law enforcement agencies provides little help to McClain. The existence of such cooperation, or lack thereof, is simply irrelevant to the indictment. *Cf. United States v. Chiavola,* 744 F.2d 1271, 1273 (7th Cir.1984) ("individuals not personally the victims of illegal government activity cannot assert the constitutional rights of others"). Furthermore, the government's alleged failure to disclose to the grand jury that Raymond was a murder suspect does not warrant dismissal.[1] At most, this information may have affected Raymond's credibility, although it would not be admissible at trial for that purpose. *See United States v. Hughes,* 658 F.2d 317, 320 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). However, defendant offers no rationale or authority for dismissing the indictment as a remedy. He relies on Department of Justice and American Bar Association standards which state that the government should present to the grand jury evidence that directly negates guilt, United States Attorneys Manual § 9–11.334, or "tend(s) substantially to negate guilt," ABA Standards for Criminal Justice 3–3.6. The allegedly withheld materials do not rise to these standards, because they relate, at best, to matters which are collateral to defendant's guilt or which provide only the slightest evidence negating defendant's guilt.

Thus each of McClain's arguments concerning the government's use of Raymond as an informant fails to establish a ground for dismissing the indictment. Furthermore, the mere stockpiling of these arguments does not bring the government's alleged misconduct to such an outrageous level as to warrant dismissal.

■ *2. Bradley Carr.* Two of the charges against McClain are allegations of tax fraud. According to McClain, "much of the information used by the government as a basis for the charges could have been derived from a Milwaukee lawyer, Bradley Carr." Defendant then erects a chain of "could haves" in an attempt to raise the possibility that Carr inappropriately delivered information concerning defendant to the government. These "could haves" stem from the following facts: that McClain discussed business ventures with Carr; that Carr was cooperating with the government in a separate case; that the government advised Carr not to be retained by McClain; that Carr spoke to his brother, an Assistant States Attorney, about McClain; and that Carr's brother spoke with States Attorney Richard Daley concerning McClain.

McClain's conclusions would be very troubling if they were true. The attorney-client privilege is of fundamental importance in our legal system, and the invasion of that relationship cannot be condoned. However, nowhere does McClain allege facts showing that he intended to enter into an attorney-client relationship with Carr or that Carr told anybody confidential information of any kind communicated to him by McClain. Even accepting all of McClain's factual claims as true, he has done nothing but engage in pure speculation as to the government's possible invasion of an attorney-client relationship. Such speculation does not even rise to such a level as to necessitate a hearing on McClain's claims. *See United States v. Swiatek,* 819 F.2d 721, 725 (7th Cir.1987).[2]

---

1. The government states that it did so advise the grand jury.

2. The government denies that it received any financial information from Carr concerning McClain.

*B. Selective Prosecution*

McClain argues that the indictment should be dismissed because the government improperly targeted him despite the existence of many other unindicted individuals who have engaged in the same type of activity with which McClain is charged. He claims that he has been singled out because he "was a personal friend and advisor to the late Mayor of Chicago, and was a close contact to the city administration."

The Supreme Court has held that "although prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is ... subject to constitutional restraints. In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (citations omitted). As interpreted by the Seventh Circuit, "it is possible that selectivity may rise to the level of an equal protection violation. Fundamental to an equal protection defense to prosecution is proof that the decision to prosecute was based on impermissible considerations such as race, religion, or the desire to penalize the exercise of constitutional rights." *Raheja v. Commissioner of Internal Revenue,* 725 F.2d 64, 67 (7th Cir.1984) (citations omitted).

McClain requests that the Court adopt the Second Circuit's test, under which a defendant presenting a selective prosecution defense "bears a heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion or the desire to prevent his exercise of constitutional rights." *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974).

Even assuming that the Second Circuit's test applies, McClain has not satisfied it. First, he has not made a prima facie case that he has been singled out. He asserts that he merely acted as a lobbyist, engaging in legal activity, and that other lobbyists engaging in such activity have not been indicted. This contention, however, begs the question of the nature and legality of McClain's activities. The legality of McClain's alleged activities is addressed in the Court's separate opinion on the substantive motions to dismiss. Whether McClain actually engaged in those activities is appropriately addressed at trial.

Second, McClain has not made out a prima facie case that the prosecution of him has been invidious or in bad faith. He does not allege that the prosecution has been based on a category which has been recognized as within the scope of the equal protection clause. He merely raises the unsupported claim that he was singled out because of his friendship with Mayor Harold Washington. Even if this claim had some factual support, it would not be sufficient to raise a due process claim:

> Assuming that the decision to indict [the defendant] and press for trial was based in part on consideration of his political prominence, this is not an impermissible basis for selection. It makes good sense to prosecute those who will receive the media's attention. Publication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law.

*United States v. Peskin,* 527 F.2d 71, 86 (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). At any rate, McClain's conclusory allegation is insufficient to raise a colorable claim of selective prosecution.

McClain alternatively requests an evidentiary hearing on this claim. Such a hearing is granted "when the defendant has presented specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions." *United States v. Swiatek,* 819 F.2d 721, 725 (7th Cir.1987). McClain has not

presented such specific facts but has rather stated only conclusory allegations. His request for an evidentiary hearing is therefore denied.

### C. Disclosures to Media

■ While the FBI investigation in this case was proceeding, Gaeton Fonzi, a reporter for *Miami/South Florida* magazine, was preparing an article relating to Michael Raymond's possible involvement in several murders and the failure of the FBI to cooperate with local law enforcement officials who were investigating those crimes. Fonzi independently learned of Raymond's role as an FBI informant in the Chicago investigation. Concerned that publication of the article would jeopardize the investigation, government officials met with Fonzi on two occasions during 1985. They disclosed information concerning the Chicago investigation and persuaded Fonzi to postpone publication of the article.

The article was eventually published in January, 1986. It included a short section referring to the Chicago corruption investigation, stating that "[t]hose nibbling at the bait ... included a Chicago alderman ..., a department chief, a deputy department head, a former chief investigator, a few lawyers with political connections and a prominent businessman." G. Fonzi, "The Untouchable," *Miami/South Florida,* Jan. 1986, at 168. The article did not mention McClain or any other defendant by name.

The meetings with the reporter were approved in advance by the Department of Justice. The article itself explains the circumstances:

Miami/South Florida agreed to delay publication three times because the FBI and Justice said premature expos[ur]e of Michael Burnett would endanger his life and the lives of the FBI agents working undercover with him and would compromise a significant corruption investigation. In communication with high-ranking Justice Department officials, we were advised that the investigation would be closed prior to this issue going to print.

*Id.* at 54 n.*. The article added:

The decision that the FBI and the Justice Department would reveal their working relationship with Burnett to us was made at the highest levels of both the Bureau and Justice in Washington. Assistant U.S. Attorney Connelly said it was repugnant to them to reveal Burnett's involvement. "I'm doing it," he said, "strictly because I feel it's necessary to keep the investigation alive."

*Id.* at 169.[3]

McClain asserts that the conversations with the reporter warrant dismissal of the indictment because they violated applicable rules and standards and because they were bound to result in publicity adverse to McClain. He argues that the disclosure violated Rule 1.07(b) of the Criminal Rules of this Court,[4] the Justice Department's standards relating to media disclosures embodied in 28 C.F.R. § 50.2(b),[5] and Federal

---

**3.** Subsequent to the publication of this article and the issuance of the indictment, numerous articles concerning the investigation appeared in Chicago newspapers. *See infra* at 1308.

**4.** Rule 1.07b of the Criminal Rules of the United States District Court for the Northern District of Illinois provides:

With respect to a grand jury or other pending investigation of any criminal matter, the United States Attorney or any other lawyer for the Government participating in or associated with the investigation shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general

scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers, or otherwise to aid in the investigation.

**5.** 28 C.F.R. § 50.2(b) provides, in part:

(2) At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial, nor shall personnel of the Department furnish any statement or information, which could reasonably be expected to be disseminated by means of public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial....

(9) ... If a representative of the Department believes that in the interest of the fair admin-

Rule of Criminal Procedure 6(e).[6]

In a separate lawsuit, it has already been decided that these specific disclosures did not violate Rule 6(e) because they occurred before the initiation of the grand jury investigation. *In re Special December 1983 Grand Jury*, No. 84 GJ 1114 (N.D.Ill. June 20, 1986) (McGarr, J.).[7] The government argues that the disclosures also did not violate Justice Department rules because those rules specifically contemplate permission from the Department to make disclosures "in the interest of the fair administration of justice and the law enforcement process," 28 C.F.R. § 50.2(b)(9), and because the rules apply only to statements that can "reasonably be expected to influence the outcome of a pending or future trial." 28 C.F.R. § 50.2(b)(2).[8] Similarly, the government argues that the disclosures did not violate Rule 1.07(b) because that rule specifically allows disclosures necessary to aid in the investigation.

The Court does not reach the question of whether the Justice Department rules or Rule 1.07(b) were violated. The Supreme Court has held that, under the harmless error rule, a district court may not dismiss an indictment for Rule 6(e) violations unless the violations prejudiced the defendant. *Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). *See also United States v. Dorfman*, 532 F.Supp. 1118, 1138 (N.D.Ill.1981). The same rationale applies to asserted violations of local Rule 1.07(b) or the Justice Department rules. As noted above, the resulting article did not mention McClain by name. The only conceivable prejudice articulated by McClain is that the disclosures to Fonzi eventually resulted in stories in Chicago newspapers which did refer to McClain by name. This theory, however, has been held to be completely speculative, not even rising to the level of a prima facie case necessary to justify a hearing. *December 1983 Grand Jury*, slip op. at 5. Because McClain's only asserted prejudice is pretrial derivative publicity, his motion based on the media disclosures is denied for the reasons stated below with respect to his motion to dismiss the indictment based on pretrial publicity.

istration of justice and the law enforcement process information beyond these guidelines should be released, in a particular case, he shall request the permission of the Attorney General or the Deputy Attorney General to do so.

6. Fed.R.Crim.P. 6(e)(2) provides, in part: "(A)n attorney for the government . . . shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . . A knowing violation of Rule 6 may be punished as a contempt of court."

7. McClain contends that the timing issue is not fatal because "the secrecy provisions of Rule 6(e) . . . apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosure of matters which will occur, such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an indictment." *In re Grand Jury Investigation*, 610 F.2d 202, 216–17 (5th Cir.1980). *But see In re Doe*, 537 F.Supp. 1038, 1046 n. 9 (D.R.I 1982) (rejecting Fifth Circuit approach as overly broad). The statements of which McClain complains, however, are not disclosures of matters which would occur before the grand jury in the sense referred to by the Fifth Circuit; rather, they were independent comments on the FBI's investigation. *See also Matter of the Special April 1977 Grand Jury*, 587 F.2d 889, 892 (7th Cir. 1978) (Rule 6(e) hearing not warranted where "much of the material appearing in (the) news reports could have been disseminated during the Government investigation that preceded impanelment of the jury"); *In re Grand Jury Matter*, 682 F.2d 61, 64 (3d Cir.1982) (Rule 6(e) does not apply where information "exists apart from and was developed independently of grand jury processes," even though it may have been "developed with an eye toward ultimate use in a grand jury proceeding"); *Pontarelli Limousine, Inc. v. City of Chicago*, 652 F.Supp. 1428, 1430 (N.D.Ill.1987) (Rule 6(e) applies only to "items that are sufficiently 'grand jury related,' such as documents which are akin to grand jury testimony").

8. McClain brought a separate case against the government in which he claimed, *inter alia*, that the Justice Department violated its regulations when it made the disclosures to Fonzi. That claim was dismissed with prejudice because the court found that the regulations did not create a private cause of action in that case and because the regulations allow disclosures which are approved by the Attorney General. *McClain v. Meese*, 86 C 2819 (N.D.Ill. May 16, 1986) (transcript of proceedings at 7).

## III. GRAND JURY TRANSCRIPTS

McClain seeks access to transcripts of the proceedings before the grand jury pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(ii). This rule provides that disclosure of "matters occurring before the grand jury may ... be made ... when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." McClain argues that Rule 6(e)(3)(C)(ii) sets a low standard for access to grand jury materials, emphasizing the word "may." The government argues for a stricter standard, emphasizing that the rule requires a "showing."

 The cases interpreting Rule 6(e)(3)(C)(ii) support the government's position. A particularized need must be demonstrated in order to overcome the presumption of secrecy of grand jury proceedings. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959); *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1088 (7th Cir.1982). Unsupported speculation about the possible existence of grounds for dismissal of the indictment is insufficient. *See United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979); *United States v. Swiatek*, 632 F.Supp. 985, 990 (N.D.Ill.1986). The Supreme Court has set forth "the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). *See also Hernly v. United States*, 832 F.2d 980, 984 (7th Cir. 1987).

 In this case, McClain states that two possible grounds for dismissal may be revealed by the grand jury transcripts. First, he suspects that the government failed to present exculpatory evidence to the grand jury. The exculpatory evidence he refers to is the investigation of Raymond's possible involvement in murder and other crimes. Aside from the government's contention that the grand jury was informed of such investigations, that information does not meet the standard which defendant agrees applies—dismissal is appropriate only if the grand jury is not presented with "substantial evidence directly exculpating" defendant. *In re Special April 1977 Grand Jury*, 587 F.2d 889, 893 (7th Cir.1978). *See also United States v. Flomenhoft*, 714 F.2d 708, 712 (7th Cir. 1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984); *United States v. Dorfman*, 532 F.Supp. 1118, 1133 (N.D. Ill.1981). The government is not required to present impeaching evidence to the grand jury. *See United States v. Gardner*, 516 F.2d 334, 338–39 (7th Cir.), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). The investigations into possible activity by Raymond do not, as noted above, even constitute admissible evidence concerning Raymond's credibility. They clearly do not rise to the level of substantial evidence directly exculpating defendant. Thus even if it is assumed that defendant is correct in his belief that the grand jury was not informed of the investigations, defendant has not alleged grounds for dismissal of the indictment. *Cf. United States v. Lame*, 716 F.2d 515 (8th Cir.1983) (allegation that prosecution failed to present exculpatory evidence to grand jury did not justify production of transcripts where defendant did not show particularized need).

 Second, McClain suspects that the grand jury was presented with "misleading taped hearsay evidence." McClain's allegations with respect to this evidence are general and conclusory. He does not describe in what ways the evidence may have been misleading or may have been hearsay.[9]

---

**9.** The government denies that the evidence is hearsay, citing *United States v. Conn,* 769 F.2d

While McClain cannot be expected to set forth in great detail the alleged deficiencies in the grand jury proceedings in light of his current lack of access to the transcripts, his conclusory allegations do not amount to the particularized need which must be shown to justify access to grand jury materials.

In light of McClain's failure to make a showing of particularized need for materials which would reveal grounds for dismissal of the indictment, his request for the grand jury transcripts might be construed as more of a fishing expedition than anything else. Despite Rule 6(e)(3)(C)(ii)'s use of the word "may," it does not contemplate the initiation of such fishing expeditions. Because McClain has not satisfied the requirements of Rule 6(e)(3)(C)(ii), his motion for access to grand jury transcripts is denied.

## IV. PRE–INDICTMENT PUBLICITY

Defendant Hutchinson's motion to dismiss the indictment due to pre-indictment publicity is based on the information disclosed to and reported in *Miami/South Florida* magazine. *See supra* at 1303. Hutchinson argues that he has a right to have his indictment considered by a grand jury which is fair and unbiased. Moreover, Hutchinson argues that the Court should presume that this right has been violated because the publicity was pervasive and inflammatory.

Initially, the parties disagree over whether the defendant has a right to an unbiased grand jury. The government cites cases which it claims reject such a right, but those cases hold only that a defendant has no right to challenge particular grand jurors or to conduct a voir dire examination of them for grounds such as bias. *See Estes v. United States*, 335 F.2d 609, 613 (5th Cir.1964), *cert. denied,* 379 U.S. 964,

85 S.Ct. 656, 13 L.Ed.2d 559 (1965); *United States v. Partin,* 320 F.Supp. 275, 282 (E.D.La.1970); *United States v. Knowles,* 147 F.Supp. 19, 21 (D.D.C.1957). The government also notes that the final draft of Fed.R.Crim.P. 6(b) omitted an earlier draft's provision which would have specifically permitted challenges of grand jurors on grounds of bias or prejudice. That provision was omitted "apparently on the view that the grand jury, which merely prefers the charge, should be scrupulously fair but not necessarily uninformed or impartial." 1 Wright & Miller, *Federal Practice & Procedure: Criminal* § 102 at 208 (1982). However, Wright & Miller continue: "Thus cases have held that an attack for bias will not lie. Almost certainly this was once the law, but it seems quite clear that it is not the law that will be applied today." *Id.* at 208–09.

The government claims that the Supreme Court has explicitly left open the question of whether the Constitution affords such a right, citing *Beck v. Washington,* 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). The passage to which the government refers does not support its position:

> It may be that the Due Process Clause of the Fourteenth Amendment requires the State, having once resorted to a grand jury procedure, to furnish an unbiased grand jury. Compare *Lawn v. United States,* 355 U.S. 339, 349–350, 78 S.Ct. 311, 317–318, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *Hoffman v. United States,* 341 U.S. 479, 485, 71 S.Ct. 814, 817, 95 L.Ed. 1118 (1951). But we find that it is not necessary for us to determine this question....

369 U.S. at 546, 82 S.Ct. at 957. The cases cited by the Supreme Court appear to hold that defendants in federal court do have a right to an unbiased grand jury. In *Costel-*

420, 422 (7th Cir.1985). In the absence of any allegations by the defendant concerning the manner in which the evidence constituted hearsay, the Court need not reach the issue. It should also be noted that the use of hearsay alone is not a basis for dismissal of the indictment. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397

(1956). At a minimum, the defendant must show that the government misled the grand jurors by failing to inform them that the evidence presented was hearsay or by using an excessive amount of hearsay. *United States v. Flomenhoft,* 714 F.2d 708, 712 (7th Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

*lo*, for instance, the Court stated that "(a)n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." 350 U.S. at 363, 76 S.Ct. at 409. A number of courts have interpreted this line of Supreme court cases as recognizing a constitutional requirement that an indictment be returned by an unbiased grand jury. *See, e.g., United States v. Burke,* 700 F.2d 70, 82 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Serubo,* 604 F.2d 807, 816 (3d Cir.1979); *United States v. Waldbaum, Inc.,* 593 F.Supp. 967, 970 (E.D.N.Y.1984); *United States v. Gold,* 470 F.Supp. 1336, 1345 (N.D.Ill.1979). The interpretation of *Costello* and the other cases as recognizing a right to an unbiased grand jury is strengthened by the passage in *Beck,* where the Court seems to assume that such a right attaches in federal proceedings and leaves open only the question of whether that right extends to state proceedings as well.

 Notwithstanding a defendant's right to be indicted by a fair and unbiased grand jury, it is unclear whether the proper remedy for a biased grand jury is dismissal of the indictment. "If a grand jury is prejudiced by outside sources when in fact there is insufficient evidence to indict, the greatest safeguard to the liberty of the accused is the petit jury and the rules governing its determination of a defendant's guilt or innocence." *Silverthorne v. United States,* 400 F.2d 627, 634 (9th Cir. 1968). *See also United States v. Polizzi,* 500 F.2d 856, 888 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed. 2d 820 (1975). At the very least, a defendant who seeks dismissal of the indictment based on a biased grand jury bears a heavy burden of showing actual bias and prejudice. *See United States v. Civella,* 648 F.2d 1167, 1173 (8th Cir.), *cert. denied,* 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981); *In re Perlin,* 589 F.2d 260, 266 (7th Cir.1978); *United States v. Fuentes,* 432 F.2d 405, 407 (5th Cir.1970), *cert. denied,* 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 822 (1971); *Estes v. United States,* 335 F.2d 609, 613 (5th Cir.1964); *Waldbaum,* 593

F.Supp. at 970. *See also Bank of Nova Scotia v. United States,* —— U.S. ——, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) ("a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). Consistent with this burden, Hutchinson has cited no case, nor has the Court been able to find a case, which dismissed an indictment on the basis of pre-indictment publicity. *See generally,* 1 Wright & Miller, *Federal Practice & Procedure: Criminal* § 102 at 210. As in other cases where defendants have challenged indictments on the basis of pre-indictment publicity, the Court finds that Hutchinson has not made the requisite showing of prejudice.

Pre-indictment publicity does not in itself indicate that the grand jury was biased. "The grand jury need not deliberate in a sterile chamber" to satisfy the constitutional guarantee of an unbiased grand jury. *Burke,* 700 F.2d at 82. Some cases have suggested that where the publicity is inspired by government officials, the necessary showing of prejudice may be reduced. *See, e.g., Silverthorne v. United States,* 400 F.2d 627, 633–34 (9th Cir.1968); *United States v. Sweig,* 316 F.Supp. 1148, 1154 (S.D.N.Y.1970). None of these cases, however, have actually dismissed an indictment. Furthermore, the Seventh Circuit has rejected the suggestion that prejudice may sometimes be presumed:

> [T]he defendants' allegation that the generation of publicity was intentional misconduct, even if true, does not merit a dismissal of these indictments. The purpose of the Sixth Amendment is to secure a fair trial for the accused. To dismiss the indictments here in the absence of any showing of prejudice would not further this purpose, but rather would constitute a "punishment of society for misdeeds of a prosecutor."

*United States v. Stanford,* 589 F.2d 285, 299 (7th Cir.1978) (citation omitted), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). *See also Civella,* 648 F.2d at 1173–74 (agreeing with *Stanford*

and emphasizing that the effect of publicity, rather than its source, is determinative).

■ Because the defendant has failed to demonstrate any prejudice, his motion to dismiss the indictment based on preindictment publicity is denied. Hutchinson also requests, in the alternative, an evidentiary hearing on this issue. The caselaw provides little guidance in determining what showing must be made in order to justify such a hearing. In *Burke*, the court affirmed the denial of a hearing where the defendant was unable to show prejudice resulting from pre-indictment publicity. 700 F.2d at 82. The request for an evidentiary hearing concerning the fairness of the grand jury implicates concerns of judicial economy which must be balanced against the defendant's demonstrated need for such a hearing, just as it does in the context of allegations of government misconduct. *See supra* at 1302–03. In this case, Hutchinson has not demonstrated a particularized need for a hearing. *Cf. United States v. Swiatek*, 819 F.2d 721, 725 (7th Cir.1987). Even if he were to establish that the grand jurors were aware of publicity concerning the case, that would not in itself establish grounds for dismissal. Hutchinson's request for an evidentiary hearing is therefore denied.

### V. PRETRIAL PUBLICITY

Defendant McClain has moved to dismiss the indictment on the ground that the pretrial publicity has been so extensive as to foreclose a fair trial. After the first references to the FBI investigation appeared in *Miami/South Florida* magazine, twenty-six articles appeared in the *Chicago Tribune* and *Chicago Sun–Times* newspapers which have been called to the attention of the Court. Aside from one article which appeared on December 8, 1986, all of these articles appeared between December 30, 1985 and April 10, 1986. Many of these articles appeared on the front page, and many of them referred to McClain by name. McClain contends that this publicity has been so pervasive as to render a continuance or change of venue insufficient to protect his right to a fair trial. The only alternative, he argues, is to dismiss the indictment.

■ "[T]he right to jury trial guarantees to the criminally accused a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). *See also United States v. Garza*, 664 F.2d 135, 138 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982). Such an impartial panel may at times be rendered an impossibility by the overzealousness of irresponsible media. However, "[e]xtensive pretrial publicity does not, in itself, render a trial unfair and violate a defendant's right to due process." *Willard v. Pearson*, 823 F.2d 1141, 1146 (7th Cir. 1987). In order to succeed on a claim that pretrial publicity renders a trial unfair, a defendant must ordinarily demonstrate specific prejudice resulting from the publicity. *Irvin*, 366 U.S. at 723, 81 S.Ct. at 1643; *Willard*, 823 F.2d at 1146; *United States v. Reynolds*, 821 F.2d 427, 432 (7th Cir. 1987); *Garza*, 664 F.2d at 138. A jury need not be blind to all publicity in order to be impartial:

> It is not required ... that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.... To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 722–23, 81 S.Ct. at 1642–43. *See also Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984); *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Reynolds*, 821 F.2d at 432;

*Garza,* 664 F.2d at 138. Thus "to show actual juror prejudice, the defendant must show that a juror cannot lay aside any preconceived impression or opinion of the case and decide the case solely on the evidence." *Willard,* 823 F.2d at 1146.

Courts have recognized a limited exception to this prejudice requirement. "In rare cases where pervasive and inflammatory pretrial publicity utterly corrupts the trial atmosphere, a court may presume the pretrial publicity prejudiced the accused." *Willard,* 823 F.2d at 1146. *See, e.g., Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (extensive adverse publicity, including polls and editorials concerning defendant's guilt); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed. 2d 543 (1965) (trial was televised); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (confession was televised repeatedly). In all of these cases, however, the publicity was far more egregious than is involved here. In each of them, the "Court overturned a state-court conviction obtained in a trial atmosphere that had been utterly corrupted by press coverage." *Murphy,* 421 U.S. at 798, 95 S.Ct. at 2035. "[T]he influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." *Id.* at 799, 95 S.Ct. at 2035. The atmosphere was one of a "circus" or "carnival." *Id.* at 799, 95 S.Ct. at 2036. Such cases are rare; "more often trials are deemed fair in spite of widespread publicity." *Garza,* 664 F.2d at 138 n. 1. "Given that virtually every case of any consequence will be the subject of some press attention ... the *Rideau* principle of presumptive prejudice is only 'rarely' applicable and is confined to those instances where the petitioner can demonstrate an 'extreme situation' of inflammatory pretrial publicity that literally saturated the community in which his trial was held." *Mayola v. Alabama,* 623 F.2d 992, 997 (5th Cir. 1980) (citations omitted), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981). Defendant in this case has made no such showing.

Furthermore, the fact that government officials may have been responsible for the pretrial publicity does not eliminate the necessity of showing prejudice. *Mayola,* 623 F.2d at 1001.

Finally, it is particularly inappropriate to determine before voir dire that an impartial jury cannot be selected. *See United States v. Haldeman,* 559 F.2d 31, 60–63 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Without conducting voir dire, the Court is in no position to determine the possible prejudice of the pretrial publicity. A further consideration is that this case, which involves allegations of corruption by political figures, may not have the interest to the general public that lawyers may assume. Even in the instance of the Watergate scandal, for example, the publicity did not deprive the defendants of a fair trial. "Most of the venire simply did not pay an inordinate amount of attention to Watergate. This may come as a surprise to lawyers and judges, but it is simply a fact of life that matters which interest them may be less fascinating to the public generally." *Haldeman,* 559 F.2d at 62–63 n. 37. Furthermore, the articles pointed out by McClain appeared, for the most part, more than three years prior to the date for which this trial is scheduled, and this passage of time is likely to erase any prejudice which the articles may have created. *See Patton,* 467 U.S. at 1034, 104 S.Ct. at 2890.

In sum, defendant has not made the showing of prejudice necessary to dismiss the indictment on grounds of pretrial publicity.

## VI. CONCLUSION

Defendants' motions to dismiss the indictment on grounds of prosecutorial misconduct and excessive publicity, and for disclosure of grand jury transcripts, are denied.